WINDOW ROCK DISTRICT COURT

March 5, 1982

No. WR-CV-612-81

OPINION

THOMAS RUSSELL and BARBARA RUSSELL,
Plaintiff, v.

JOHNNY DONALDSON, d/b/a NAVAJO MOBILE
HOME SALES, Defendant.

Honorable Tom Tso, Judge presiding.

This is the opinion with the findings of the court following trial upon claims for damages under 7 NTC Secs. 607 and 609 and for conversion for the wrongful repossession of property. Following trial the court required the submission of proposed findings of fact and law, and briefs to support those findings. The court commends counsel for the parties for the quality of the findings and briefs submitted. The findings clearly state the positions of the parties, and the requirement that briefs assist the court in making a determination has been fully satisfied by counsel.

The facts and law which the court finds are as follows.

FACTUAL FINDINGS

Thomas and Barbara Russell, the plaintiffs, are members of the Navajo Tribe, and they reside within the Navajo Nation. Mr. Johnny Donaldson, a non-Indian, is a resident of the Navajo Nation and does business as Navajo Mobile Homes Sales within the Navajo Nation. As a resident of the Navajo Nation the defendant has the benefit of its laws and is obliged to conduct his business according to such laws.

On September 13, 1976 the Russells entered into a written agreement with Navajo Mobile Home Sales for the purchase of an Artcraft mobile home. The agreement was a printed standard form agreement and it shows the contract was made at Mr. Donaldson's place of business in Fort Defiance, Navajo Nation. The contract was to be performed entirely within the Navajo Nation and the agreement shows the mobile home was to be delivered and set up at the Becenti Trailer Park (space #20) in Fort Defiance. Another aspect of the transaction which shows a connection with the Navajo Nation is that the insurance was issued by the Denay Insurance Agency of Window Rock. The court notes judicially the Denay Insurance Agency is a Navajo owned and licensed business. Therefore all the events here are tied solely to the Navajo Nation and its laws.

The cash price of the mobile home was $3,800; the amount financed under the agreement was $3,065.25 and the finance charge was $734.91.

Almost five years later, in July of 1981, a dispute arose between the parties because the mobile home payments and lot rent fell due at

the same time. An employee or agent of Donaldson's by the name of Paula delivered this note to the plaintiffs at about that time:

"Tom & Barbara -

I will be looking for you to come by the house today.

The balance due on the trailer is $288.05 and the rent is due from January thru May - $400.00.

Please do not remove anymore furniture until you talk to me.

We plan to pull this home into our back yard at Black Rock until the balance due on the trailer is paid and the Rent.
/s/ Paula -"

The Russells did not have both the rent and the mobile home payment, so they offered the $288.05 due on the mobile home to the defendant. The payment was refused, and some time during the first week of July, the trailer was repossessed. The Russells offered to make the mobile home payment after the repossession, but that payment was again refused.

The defendant did not obtain the written permission of the plaintiffs for the repossession, and Navajo Mobile Home Sales did not avail itself of the services of the District Court in nearby Window Rock to obtain judicial sanction for the repossession.

The mobile home was kept within the Navajo Nation after its repossession.

## LEGAL PROBLEMS PRESENTED

Based on this fact situation the Russells say they are entitled to damages under the Navajo repossession statutes (7 NTC Secs. 607 and 609) and under the law of conversion. Since this is a case to be decided through the application of Navajo statutory law, the court will not apply the general law of conversion under Arizona law.

The defendant raises a number of very serious legal questions in his claim the plaintiffs are not entitled to relief:

1. Provisions of the Uniform Commercial Code and the Uniform Sales Act as adopted under Arizona stautory law permit peaceful repossession without a prior court order;

2. 7 NTC Sec. 607 applies only to the removal of repossessed property from the Navajo Nation; and

3. The Russells waived the benefits of the statute as a part of the purchase agreement.

## LAW TO BE APPLIED

Mr. Donaldson, as Navajo Mobile Home Sales, urges this court to apply Arizona statutory law in resolving this case, but the court is forbidden to do so in this specific situation. 7 NTC Sec. 204 is the

statute which regulates the law to be applied in the Courts of the Navajo Nation. That statute has a checklist of the law to be applied, and it is clear that where the court can resort to tribal law - whether statutory or customary - it is barred from applying state law.

The dispute here is a kind which has been the subject of a great deal of litigation in the field of consumer law. Very simply put, the Uniform Commercial Code and the Uniform Sales Act permit sellers or parties holding a security interest in property to simply take the property without notice, as long as there is no breach of the peace. These statutes have permitted the unsavory practice of simply taking a person's car, television, mobile home or other property even though the property is almost paid for or the consumer has a legitimate legal dispute over payment. Although a number of consumer protection statutes have been enacted by the Congress of the United States, the states (with some notable exceptions) persist in allowing repossession without notice. Although it has been clearly recognized such practices violate basic concepts of due process, only a few legislatures have acted.

The Uniform Commercial Code and the Uniform Sales Act provisions for self-help repossession would be the law here but for the passage of 7 NTC Sec. 607, regulating such practices. Therefore only Navajo law will be utilized by the court in resolving this matter. See Iron Crow v. Oglala Sioux Tribe, 231 F.2d 89 (C.A. 8, 1956); United States v. Wheeler, 435 U.S. 313, 330 (1978); Montana v. United States, 450 U.S. 544, (1981); Merrion v. Jicarilla Apache Indian Tribe, ____ U.S.____, 71 L.Ed.2d 21 (1982) (authority over persons doing business).

THE COVERAGE OF 7 NTC Sec. 607

The heart of this case is the question of whether 7 NTC Sec. 607 is meant to cover situations where the repossessed property is not taken from the reservation. The defendant must have construed the statute to permit him to repossess without consent of a court order if the property was kept within the Navajo Nation, and the idea must have been he could hold the trailer and use it to obtain the ransom of $400 rent. The premise presented to the court is that businesses can effect a discrimination in the rights of Navajo consumers simply by holding or disposing of repossessed property within the Navajo Nation. This practice could be utilized by dealers in the border towns by simply repossessing property and selling it to "innocent" third persons to be taken off the Navajo Nation.

As appealing as it is to the court to decide this case on the grounds of equal application of the law and discriminatory application, that sort of complicated reasoning need not be used, because the Navajo Tribal Council intended that the statute cover all repossessions of personal property.

The court must resort to legislative history in deciding this point. The defendant says, and very correctly so, "Before the court may involve itself in construing or interpreting a statute . . . there must be a reasonable ambiguity which makes the statute unclear." The court need not restate the many cases stating this point of law, because that is the general rule, correctly stated.

However the statute is ambiguous because it speaks of limitations

on repossessions of personal property of Navajo Indians "from land subject to the jurisdiction of the Navajo Tribe." That statute could be interpreted as urged by the defendant or it could be a poorly-drafted policy statement that property cannot be removed from any land subject to the jurisdiction of the Tribe. There is sufficient ambiguity in the statute to properly refer to legislative history, and the court will do so to answer the posed question of what the statute means.

7 NTC Sec. 607 is the condification of Tribal Council Resolution CF-26-68, enacted on February 7, 1968. Counsel for the plaintiffs assisted the court greatly in supplying a copy of the pertinent council proceedings transcript for that date.

The proposed resolution was read, and councilman Frank Luther moved its adoption, indicating it would be for the benefit of tribal members who did not speak English or who were uneducated. Minutes of the Navajo Tribal Council, February 7, 1968, p. 96. (Cited as "Minutes" below). The debate was extensive (covering 18 pages of transcript) and again and again council members asked precise questions of the author of the measure - Edmund Kahn, the Tribal Attorney - regarding a number of points, including whether the resolution would apply to businesses repossessing only on reservation. Mr. Kahn said:

> "One question was will this resolution allow El Grande Motors at Tuba City to continue as he pleases to repossess cars sold which are on the Reservation if payments are delinquent? The answer is no. This resolution will cover everyone who does business on the Reservation. If someone off the reservation sells property and the property comes on the reservation, it's controlled by this resolution. If someone on the reservation does the same thing, sells property, he must comply with the terms of this resolution." Id. p. 100.

During another part of the debate Mr. Kahn addressed the point again:

> "Now I'll have to try to answer the question. This resolution would cover any business either off the Reservation or on the Reservation that sells anything to a Navajo who brings that item, a T.V. set, pickup, whatever it may be, and uses it here and if he bought this on credit and doesn't pay his bill, whoever sold it to him, whether it's somebody up here at Fort Defiance or somebody in Gallup, whoever sold it to him and wants to take it back can only take it back if he follows the law of the Navajo Tribe as it is spelled out in this resolution." Id., p. 106.

Relying upon the answers of its professional attorney that the concerns raised, including the question before the court here, were satisfactorily covered in the resolution, it passed 50 - 0. Id. p. 110.

The conclusion of the legislative history that the Navajo Tribal Council intended to regulate all self-help repossessions is confirmed in subsequent Tribal Council action. See 73 Am.Jur.2d, Statutes Sec. 178 (use of subsequent legislative action in interpreting statutes). In 1969 the Tribal Council enacted Resolution CJN-53-69 (June 4, 1969), and that resolution contained a preamble which interpreted Resolution CF-26 -68 from the Council's standpoint. The purpose of the statute before us was said to be "to prevent violence and breach of the peace in the repossession of personal property of Navajo Indians from land subject to the jurisdiction of the Navajo Tribe. . . ." This sort of purpose is one which covers a general prohibition of self-help repossession. Why would the Council intend to permit violence and breaches of the peace in one instance and not in another?

Aside from the use of Council minutes and a subsequent resolution, the court notes that when it construes a remedial statute, that is, one which provides a remedy, grants benefits or corrects errors and abuses, the statute must be construed in a liberal fashion to carry out the purpose of the statute. 73 Am.Jur.2d, Statutes Sec. 278.

Self-help repossession is an archaic legal provision. It permits sellers to ride rough-shod over consumers and (as is apparent from this case) use the holding of essential property needed for daily life as a means of extorting money from the consumer. True, repossession may be legally justified in most cases, but there is simply no justification for not allowing the consumer to voice his grievances as long as the doors of the courts are open to creditors. The Council minutes repeat many instances of the abuse of Navajo consumers, and the elimination of self-help repossession was an enlightened measure for the protection of the Navajo People. While many businesses whine about our repossession law and use every available means of blocking or frustrating it (e.g. in Federal court actions), the measure is a progressive consumer law and one which has been adopted successfully in other jurisdictions.

Therefore I hold, as a matter of Navajo law, that 7 NTC Sec. 607 bars all self-help repossessions of personal property within the Navajo Nation. I also hold the statute was violated in this case.

## THE EFFECT OF WAIVERS

The Navajo Tribal Council members debated the repossession resolution in detail, and they asked the Tribal Attorney many wise questions about its effect. One such question anticipated the waiver problem before this court. Councilman Albert Ross recited problems with Navajo consumers facing fine print, and he bluntly asked what would happen if the seller put a clause in the purchase agreement allowing repossession. Mr. Kahn answered:

> "We have had an experience when I was with the Navajo Legal Aid Service, just that sort of thing happened where the Navajo people would sign on lines and then it is possible to slip a piece of paper in so they don't realize what they are signing so when we wrote this we used these words, written consent to remove the property from lands subject to the jurisdiction of the Navajo Tribe shall be secured

from the purchaser at the time repossession is sought. Now if this resolution is adopted the law of the Navajo Tribe will be clear. It will say that they must get written consent when they go to repossess the property. If they get something in writing at the time the deal is made that will not be valid. That will not satisfy this clause in the Navajo Tribal law. I think it will protect the Navajo people from the possibility that they might sign this at the time they put the vehicle and not know they signed it." Minutes, p. 102.

In other words, since our statute is one which protects and which forwards a valid governmental purpose of protecting consumers, there can be no waiver as is put forward by the defendant. The Navajo Nation properly wished to prevent violence and breaches of the peace, and since the statute is one for the protection of the public and the preservation of public peace, I hold there can be no waiver of the rights conferred by 7 NTC Sec. 607.

There is dictum to the effect our repossession statute provisions can be waived by such a provision in a contract. Brown v. Babbitt Ford Inc., 571 P.2d 689, 695-696 (Ariz. App. 1977). With all due respect to my brothers of Arizona Court of Appeals, they have no right to so interpret our law, particularly with respect to its application within the Navajo Nation by the Navajo Tribal Courts. In that case the Arizona Supreme Court declined to grant comity to our repossession laws due to conflicts with Arizona statutes, particularly the statutes urged by the defendant. Utilizing principles of conflicts of law, 7 NTC Sec. 607 modifies Arizona law as it is applicable within the Navajo Nation, and therefore Arizona law cannot be applied insofar as it conflicts with ours. There can be no waiver of the statute or agreement to self-help respossession within the Navajo Nation.

LIABILITY

The repossession here was unjustified. The plaintiffs had made most of their payments on the mobile home over a period of almost five years. Although the plaintiffs were to have made their payments over a period of three years (36 months), they were permitted to extend that period by the seller. The ledger card kept for the transaction shows the defendant waived late payment on a number of occasions, and although the plaintiffs were behind on their payments, they made offers to comply with the contract. Those offers were not refused on a ground connected with enforcement of the contract.

The plaintiffs had fallen behind on their rent. What was the defendant's legal remedy for that? An action in forcible entry and detainer for possession of the lot space and the back rent. The defendant claims a right of self-help repossession, but even without the statute there is utterly no legal justification for taking someone's home when payments for the home are tendered, just to collect back rent. All civilizations rely upon the use of impartial mechanisms rather than unbalanced positions of strength. That balance must be enforced here.

DAMAGES

The damages allowed under 7 NTC Sec. 609 are measured either by the credit charge plus 10% of the principle amount of the debt or the time price differential plus 10% of the cash price. The court will allow damages as follows: The finance charge under the contract was $734.91, and 10% of the price of the mobile home is $380. Therefore the plaintiffs are entitled to statutory damages in the total sum of $1,114.91.

CONCLUSION

Based upon the foregoing discussion; the plaintiffs will be granted judgment on their first claim in the sum of $1,114.91, plus costs.